Good morning, Your Honor. Good morning, Counsel. May it please the Court, my name is Chuan Hong. Before I start my argument on question of law, I'd like to clarify some of the facts, I should say false facts, used by the Court and the appellees. Because of these four false facts, District Court dismissed the case. So first false fact is the following. Plaintiffs, my client, alleged that Hormogrenate CoQ10 Plus did not remove her fatigue, mood change, and insomnia. That's what she claimed. Then court order, which is shown in ER 016, and the plaintiff's allegation is a made-up statement because the website, parenthesis, famousherbs.com, said the product reduced the health issues, not removed the health issues. This is absolutely wrong. Why is the website of any relevance at all? You don't allege that the website was owned by or is a statement of the defendants. It's a third-party website. Yes, I'm going to... And you say in your, let me just, and you say, well, the website says it relies on information from them, but that's not a statement by them and it doesn't, and you haven't identified the information from them that the website purportedly relies on. So why is the website of any relevance at all? Well, website is considered to be label or labeling under FDCA. If it's their website to be sure. The question I'm trying to ask you is how, there's no allegation in this case that makes it plausible that it's their website or their allegations that are on the The second website, the court and the appellee claims the third-party website... On its face it's a third-party website and you don't allege. You're given seven opportunities to amend. You never make a plausible allegation that it's their website. Oh, it's because of the false fact they insist to use in dismissing the case. For example... No, no, but, so tell us about this website that, where, is it owned by UMECN? Does he put information on it? So I assume it's a www.umecnusa.com The other one, not the UMECN. The other one. That website is a www.famousherb.com. It has a picture of UMECN product or issue, CoQ10, and it give an address of UMECN headquarter in California, and also it cite the UMECN USA booklet, which is called Nature is a Healer. You could rely on, you can rely on the UMECN booklet. I don't doubt on, I don't doubt that. My question is, can you rely on a third party's description of what he thinks UMECN products do? Yeah, may I finish the sentence which I couldn't finish? Sure. The UMECN booklet, Nature is a Healer, is listed there with the asterisk. So if you trace back to the statement with the asterisk, those asterisks are the statement about the insomnia, about the mood change. It's the statement that's referenced in the UMECN booklet? That's what, that's what the website says. I'm asking you, do you have the, did you allege the statement is actually in the UMECN booklet, or did you simply allege that the website said the statement was in the UMECN booklet? Of either latter, because at the present time, I don't know who owns and who controls the famous herb, and even the WWW, UMECN USA, we assume it has a name, the UMECN USA, and all the other circumstantial evidence to say that this must be a UMECN website, otherwise the third party, who is crazy, spend more money and spend their time in advertising third party's product. That's absolutely unreasonable. Did you allege that, that they were UMECN owned or controlled? In the complaint? Uh-huh. Yes, Your Honor. Where is it, where is that? It's in the, it's a pair of five, six, seven, that ring. Okay. You're talking about the second amended complaint? The, yeah, second amendment, amended complaint. Yeah, it's in ER 152, page three of the second amended complaint. Reasonable consumer knew that defendants controlled or placed the cited statement about the pomegranate-made bulk cocutane on www.famousherb.com. The website refers, and so on and so on. But these insomnia disease claims are not made only on famous herb. It is also made in UMECN website, which defendants and the judge implicitly admit that that belongs to the UMECN, the manufacturer. There's a... Well, just help me here. I'm looking at the allegations in 152, and it says reasonable consumers knew that they controlled. I mean, what does that mean? Reasonable. Well, how do reasonable... Why is it plausible that reasonable consumers knew that they controlled or placed the statements on famous herbs? Yeah, in California, the Sherman Act, if anybody claim falsity or deception, that determination of a falsity or deception must be based upon... I understand, but why is it plausible that defendants... After all, take off the reasonable consumers. Just assume that the allegation is defendants controlled or placed the cited statements about pomegranate balls on www.famousherbs.com. Why is that plausible? Well, because the way... I mean, you're emphatically with particularity here because you're alleging fraud. Yeah, if it's a third party website, then we have to see their address or their telephone number, but this website give UMECN's telephone number, UMECN's address, UMECN's booklet, and UMECN's picture of the product. I just found UMECN's address and phone number on the web. Oh. They're not secrets. The UMECN phone numbers is given there too. Yes. Can I continue? Then I think it's my list of false factual statement in the court order and defendant's responding brief will answer several of questions. The second false... Oh, no, no. First one, it says the court decision, court said pomegranate CoQ10 did not remove a condition, does not make a statement that the product will reduce the condition false. This is wrong. Why? You cannot find the word reduce in two pages of the famous herb website. So they created their own statement and compared and manufactured the fabricated statement with plaintiff's accusation of falsity. Then they said you must have made up the story to accuse the manufacturer. The second false fact is the following. The court order ER14 says plaintiff has not alleged that the cited statement regarding insomnia, fatigue, mood change of www.famousherb.com are quote from the UMECN USA information booklet. If the court and defendant examine the famous herb website more carefully, they will see there's an asterisk mark after insomnia mood change. Then you link that asterisk mark to the bottom of the page. Then you see UMECN USA information booklet. So I thought that's more than enough to tell these statements are from the UMECN USA information booklet. There's a complaint alleged which way they, why are they false? What's the evidence to suggest that those representations were false? Oh, that is regarding 9B, 9B analysis because it doesn't work. In other words, it didn't work for her or there's some sort of general scientific evidence that it doesn't work for X number of people. Oh, because no one started UMECN product cocutane. Therefore, there is no scientific evidence, but anecdotal evidence based upon versus national, which is accepted by this court. It requires a scientific evidence or scientific study, experimental test, or anecdotal evidence. Then court cite ECLA so much to give the meaning of the anecdotal evidence, but that product hasn't very different from this product. Those product advertise that the knee joint will be lubricated. Knee joint will be aligned to something like this. So no customer client can tell what they're talking about. So in that case, you can not present the reasonable anecdotal evidence. But here, the claim is that insomnia can be cured, mitigated, or prevented. Even though those words are not given, since they use the disease term, the disease term is used for drug. But the drug is defined as an article which mitigate, diagnose, cure, prevent the disease. So as long as a claim can be interpreted, any one of those, you can consider that as a disease claim, or you can consider article as a... So I want to understand your claim. Let's assume for a moment that the third party website works, that you can rely on it here. It says recommended for women experiencing menopausal symptoms. When I'm looking at the asterisks, and the other ones, who should take it, and there's a list of people who should take it. Is it your position that those things can be reasonably interpreted as a statement that these will solve those problems, mitigate those problems? What's your position? My position is the following. It says, CoQ10 is recommended for a person with insomnia, mood change, or... I know that's what it says. I'm asking you what you think that means. Yeah. Reasonable consumer will read that, oh, they say, oh, by taking CoQ10, maybe some of my problem of insomnia, mood change can be eliminated. Precisely the question I asked you. So does this suggest they will be eliminated, or that they might be mitigated? It doesn't matter, Your Honor. Most important thing is the inclusion of the words insomnia. So the extreme example is the following. This CoQ10 is good for person with skin cancer or lung cancer. Then reasonable person, or the ignorant, or unthinking, or credulous customers will see that, oh, this is good for curing cancer, or mitigating cancer, or preventing cancer. If those are the consumers who happen to be reasonable, or ignorant, or... I'm talking about 60 years ago. I think you've answered my question. Yeah. All right. Counsel, you run out of time. So we'll hear from the other side. All right. Good morning, and may it please the Court. Stephen Richards of Houston Hennigan LLP on behalf of Defendant Topelli's Umeccan USA, Inc. and Brian Hahn. A lot going on here. I'd like to start with two of the colloquies from Mr. Hong's argument just now. First, with respect to the famousherbs.com website. Mr. Hong did not connect, pardon me, plaintiff did not connect that website to Umeccan satisfactorily for the district court. The district court should be affirmed on that point. I do want to visit one particular issue there, which is the appearance of Umeccan's address on the website and the phone number. As you'll see, and I'm looking here at ER 198, that information only appears because it's on an image of the Umeccan product. Assume for a moment that he didn't plausibly allege that it was your website. He does allege that it purports to quote from your information booklet, and if the quotes from your information booklet are accurate, why can't they be the basis of his claims? Well, there's no allegation that they are accurate, Your Honor. I know, but now we're talking about plausibility. We have a website that cites to a specific page of your information booklet. He can't conduct discovery because we're on a motion to dismiss. So why doesn't that make it plausible that your information booklet says those things? Well, two responses, Your Honor. First, there's no allegation that he needs discovery to find the information booklet. I'm asking, you see, try to answer the question I'm asking. The question is why doesn't the citation on this website to your information booklet with a page site make it plausible that your information booklet says precisely what this website says? If it were a correct citation to the booklet, then yes, we would of course agree, Your Honor, that there would be a plausible allegation that Umeccan was responsible for that statement. That doesn't mean that the statement is labeling for the purposes of... No, that's a different question. So, but can I at least start out with the proposition that your information booklet contains these kinds of representations? I don't think so, Your Honor. Not at least absent an allegation that the booklet exists and that it says these things. I don't think... Oh, come on. Here's the problem. You know whether the booklet exists or not. The booklet does exist. The booklet says something. What it says may not be sufficient to support their claims, but the notion that at the motion to dismiss stage, he has to do more than produce a website that cites, that purports to quote from your booklet is a little troublesome to me. Well, I'm happy to concede, Your Honor, that if the booklet says what the third party reports that it says, that those statements could be attributable to Umeccan, not necessarily... Okay, so if they are, why don't they support his claims? Well, first of all, they may not be labeling. And again, we'd need to know more about the booklet to know whether or not it accompanies a product and therefore could qualify as labeling under the federal statutes and regulations here. That's the first issue. The second issue goes to the content of the statements. As you know, plaintiff here has two theories based on this language. The first theory is that these statements make what are impermissible disease claims under federal law. And the second is that they make misleading structure function claims under federal law. I'll begin with the structure function claims. There's no allegation that these structure function claims are misleading because plaintiff hasn't offered sufficient allegations under Rule 9b that they were untrue in her instance or untrue in anyone else's instance. And this returns to the remove versus reduce issue that you were discussing with plaintiff's counsel earlier, saying, look, I have insomnia and it wasn't cured when I took this product that is recommended for people with menopausal symptoms, including insomnia, is not an allegation that the recommendation for those individuals is a misleading structure function statement. As to the disease claims, plaintiff's counsel is correct that in some circumstances, a reference to insomnia or chronic fatigue could be construed as a disease claim under federal law. But in this instance, where it's part of a laundry list of other menopausal symptoms and where the relevant federal regulator has made clear that menopausal symptoms are symptoms of other stages of life, aging, the menstrual cycle, the menopausal, et cetera, that those are our symptoms and conditions that are properly the subject of structure function claims and not you often see on vitamin supplements and other pills that say this is good for your bones or good for your heart. There's usually a disclaimer that says something about the FDA not having in any way approved or evaluated in substance, indicating that the FDA doesn't endorse any of this. Does these products contain such a disclaimer? Yes, Your Honor. The disclaimer appears on the products themselves, i.e. on the packaging of the products. It also appears on the websites for the products that are actually controlled by Omeca. And I would refer... And is that omecanusa.com? Yes, Your Honor. We can see that that's our website. So I would refer you to pages 192 of the ER as well as page 189 of the ER. And if you'll look at 189, you'll see that there's a box at the top of that page, direction, and then we have the asterisk. These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease. That's the required language of the disclaimer. The disclaimer appears on the product and the disclaimer is linked to the text describing the product by an asterisk as required by federal law. I do want to visit the Melendrez issue just briefly. As you know, the District Court dismissed all claims based on 13 products that plaintiff did not purchase on the ground that she lacked Article III standing to pursue those claims. And I understand there's a question now whether that was error under the Melendrez case or under the BK case from just a few weeks ago that applied Melendrez. It was not. Melendrez does say that the Article III standing analysis concludes once we've determined that the named plaintiff has standing to pursue at least one class claim. But it must not, it cannot be the rule that that means that any plaintiff, any putative class representative could bring any sort of class claim. Why isn't that addressable as Melendrez suggests at the class certification stage? You may be a terrible representative. There may be lots of reasons not to grant class certification, but why should we be parsing those issues at the motion to dismiss stage? When the differences between the named plaintiff, Your Honor, and the unnamed class members, the claims of those particular individuals, are significant enough, they implicate Article III standing and therefore the subject matter jurisdiction of the court. And therefore, they're appropriate to be addressed at the motion to dismiss stage. Are they? Why? Doesn't, see, my problem is, you may be right as a matter of policy, Melendrez doesn't appear to be widely accepted among our sister courts. But since we start off with it as a law, Melendrez makes an expressly different conclusion, doesn't it? Well, I don't want to lose the policy point, which is that if... Well, you can't, the policy point doesn't help me if Melendrez is against you. Sure. Then in that case, I would refer you to Melendrez's discussion of the Lewis case from the Supreme Court. So in Lewis, there were a number of inmates in the Arizona penal system who challenged the Arizona penal systems, the access to courts that they had in that penal system. And some of the inmates had particular problems, some were illiterate, some didn't speak English, others were in lockdown and weren't permitted to visit the law library. And the Supreme Court said in that case, because only the illiterate inmates ultimately were able to show an injury in that case, they didn't have Article III standing to pursue claims. Right, but the case was not dismissed at the motion to dismiss stage. That's correct, Your Honor, but Article... So the court had a record and said, look, these folks don't have standing. But the question in Melendrez is whether it ought to be dismissed at the motion to dismiss stage. And the statement of Melendrez doesn't seem to leave much room for doubt. If the individual plaintiff has standing, then you shouldn't dismiss the class claims until later on. Well, I would emphasize again that Melendrez is also not a dismissal at the motion to dismiss stage. Melendrez is actually a post-trial appeal, so there, of course, the court also... But you don't need to win under Melendrez point in order to prevail in this case, do you? Absolutely not, Your Honor, because plaintiff never stated a claim in her individual capacity, this court need not reach the claim she attempted to state on the basis of the products that she did not purchase. I want to also visit the Davidson issue with the availability of injunctive relief. Davidson had not yet been issued by this court when the district court below in its first order granting Umekin's motion to dismiss dismissed plaintiff's claims for injunctive relief under Article III standing. And Davidson subsequently, as we've argued in our brief, and I don't intend to belabor this, but we believe that the district court's analysis with respect to injunctive relief was precisely in line with Davidson. The district court correctly determined that whether or not the plaintiff had Article III standing to pursue injunctive relief under Davidson and Lyons and the other cases turned on whether or not she was likely to And there are no allegations in this case that she does intend to purchase any of these products again. The only hint of that came in plaintiff's reply brief. This is at page 18 of the reply, where for the first time she says, oh, I could allege that I want to purchase these products again, but I would emphasize. She had two opportunities below to amend. Yes, Your Honor, although these cases came out later, I understand. Right. So if it makes a difference, can we say it would be futile? Oh, absolutely. I'll bet you he'll allege that. Yes, Your Honor. So he's told he has to allege it, he'll allege it. Yes, Your Honor. Two quick responses. First, as to the futility point, you're right. Multiple opportunities to allege it didn't allege it. And then second, I would emphasize that in Davidson, the Court noted that those allegations were present and that there was no reason, nothing in the plaintiff's complaint to suggest otherwise, i.e., to call into question the plaintiff's sincerity in pleading that she intended to purchase the products again. But didn't she say that it was worthless? That's precisely right, Your Honor. She says they're worthless. She says that they're snake oil. I think it's reasonably clear from this record before the district court that plaintiff does not intend to purchase them. That even if it says she wouldn't purchase them if they said this doesn't help you in any way. Yes, Your Honor. Which is basically her allegation. See, that's the problem with the injunctive relief claim in this case. She says they're worthless. If you'd only told me they were worthless, I wouldn't have bought them. But I can't take from that that if I knew they were worthless, I'd be happy to buy them in the future. That's precisely right, Your Honor. With respect to the other colloquy that you developed with plaintiff's counsel during his argument, with respect to whether or not he's adequately pled, anecdotal evidence of falsity with respect to these products, you'll recall that the district court discussed this at length and said, look, all we have in the allegations is that plaintiff visually measured the spots and wrinkles on her skin and believed that they didn't change. And the district court properly, in our view, said that that's just not enough, as anecdotal evidence goes, to state a claim for falsity under Rule 9b. I would like to draw your attention to one other thing that is maybe not apparent from the district court's order. The district court complained correctly, in our view, that plaintiff had not pleaded any facts as to the frequency with which she took these products, the duration for which she took these products, the amounts in which she took these products. It's clear from her allegations, both in the body of the complaint and in the exhibits of the complaint, that she actually bought limited quantities of these products. As to the CoQ10 balls, she bought a two-month supply. And as to the C-balance, it's actually unclear because her allegations are not consistent. She either bought about a two-and-a-half-month supply or a four-month supply. But she says in the complaint that she used the products for about seven months before stopping, presumably with some left, because she felt like they weren't working. As a result, we know, we do know even from this record on the pleadings, the plaintiff did not use the products consistent with the directions on the products. And we would submit that that heavily influences her ability to state a claim based on anecdotal evidence. I also don't want to lose sight of the RICO claim in this case, Your Honors, the only claim that's been pleaded against Mr. Hahn. The RICO claim, as the district court explained, fails because plaintiff doesn't allege any sort of fraud. And of course, it's mail-and-wire fraud that were the alleged predicate acts for the RICO claim. However, there are other independent reasons for the dismissal of the RICO claim. There's insufficient allegations of an enterprise. There's no allegation that Mr. Hahn actually undertook any fraudulent acts or that he directed any fraudulent acts by other people or that he had the requisite fraudulent intent. So the RICO claim is subject to dismissal as well. I see my time is nearly concluded unless there are further questions. I'm grateful for your time and attention. No, thank you. Thank you, counsel. Would you please allow me two minutes? Yes, you can have two minutes. Two minutes. March o'clock. ER 193, 194, 195. This is the WMEC website, including testimonial regarding insomnia, mood change, and so on. It doesn't have a disclaimer at the end of the page. So this disclaimer must have been provided in bold case in a box, but it's missing. Therefore, this is a violation of the rule. Where's the disclaimer on the product? Disclaimer at the end of this web page, 193. No, I just have to ask you, is the disclaimer on the product? Oh, disclaimer on the product? Yes. Oh, it doesn't matter. Don't tell me what matters and doesn't matter. Just to answer my question, was the disclaimer on the product? Oh, I don't think there is a disclaimer on the product. You think there is? There is a label, small label. I didn't pay attention to that, but I don't think so. No, there is one. There's no disclaimer on the product? No, no. It has a dietary supplement. Contrary to what your friend said, there's no disclaimer on the product? No, I don't see. And the other... Are you just looking now or you've examined, you've looked at this before you got here? Are you just answering the question now on the basis of your skimming of the ER or did you, do you know for a fact based on your looking at the box? Oh, that is my understanding, but I want to make sure what I'm answering to is correct or not. But anywhere labeling or label include anything, it is the rule. Is it two minutes is over. Can I have one more minute? You may answer Judge Corman's question and then your time will be up. Yeah, there is none. No, no disclaimer in the bottle. And the other one was, what was that? Wall Flip. The motion to dismiss the order was issued in June, 2017. And the Davison versus Kimberley Clark was issued in December, 2017. And the amended one was May, 2018. The Davison says, even if the... We know what Davison says. Yeah. So no intention to buy, but if there is an allegation that, which shows a injury in fact, the dismissal can be prevented. But at that time in June, 2017, we didn't know that kind of modification amendment. We understand counsel. Thank you very much. Shin versus Yumekin will be submitted.
judges: Wardlaw, Hurwitz, Korman